THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TODD SCHREMS, Defendant-Appellant.

Second District   No. 2—90—0329

Opinion filed February 4, 1992.

G. Joseph Weller and Paul J. Glaser, both of State Appellate Defender's Office, of Elgin, Kathleen T. Zellner, of Kathleen T. Zellner & Associates, of Naperville, and James P. Palermini, of Huck, Bouma, Martin, Charlton & Zellner, P.C., of Glen Ellyn, for appellant.

James E. Ryan, State's Attorney, of Wheaton (William L. Browers and Gregory L. Slovacek, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE DUNN delivered the opinion of the court:

Defendant, Todd Schrems, was indicted in the circuit court of Du Page County on one count of unlawful possession with the intent to deliver more than 15 grams but less than 100 grams of a controlled substance containing cocaine. Following the denial of defendant's motion to suppress, the trial court found defendant guilty at a stipulated bench trial and sentenced him to a six-year term of imprisonment.

Defendant appealed, and the sole issue he raises on appeal is whether the trial court's denial of defendant's motion to suppress evidence was manifestly erroneous.

The following relevant facts were adduced at the hearing on defendant's motion to suppress evidence. The first witness to testify for defendant was Leo Seiffert. According to Mr. Seiffert, at approximately 6:55 a.m. on April 11, 1989, he was returning home in his automobile. While driving, he came upon a vehicle which had collided with a tree. He observed the driver, whom he identified as defendant, still in the vehicle and suffering from a head injury.

Mr. Seiffert remained next to the driver's side of the vehicle for about 10 minutes until the police arrived. During that time he did not inspect the vehicle although he had the opportunity to observe the interior of the vehicle. He did not, however, notice any glassware or anything that caught his attention. He could not recall whether the glove compartment was open, nor did he observe any open compartments between the two seats in the automobile. He did not observe anything on the backseat, the front seat or the floor that attracted his attention other than a milk carton on the front floor.

Mr. Seiffert stated that the police arrived about the same time as the ambulance and he left prior to the paramedics completing their

treatment of defendant. He was not present for any conversations between the police and defendant.

On cross-examination, he conceded that his attention was directed to the injured driver and he did not know one way or the other if the glove compartment was open. He also admitted that from his vantage point defendant blocked part of his view toward the middle of the vehicle and that he was gone before defendant was removed from the vehicle.

The next witness to testify was Rodney Anderson. On the morning of the accident, Mr. Anderson observed a vehicle cross his driveway and hit a tree. He exited his home, observed the driver to be bleeding, went home to call 911 and returned with a Kleenex for defendant. The driver's door of the vehicle was open, and he reached in and handed defendant the Kleenex. He remained on the driver's side of the vehicle but did not look through the window of the rear door on the driver's side.

According to Mr. Anderson, he was not looking in the car although he did observe some trash and a milk carton on the floor of the vehicle. He did not observe any glassware in the vehicle and did not see any open or closed compartments therein. He was not concerned about anything in the car other than if defendant was coherent. He could not recall if the ambulance or the police arrived first.

Martin Morawski, one of the paramedics who responded to the scene, also testified for defendant. When the ambulance arrived at the scene he observed defendant's vehicle against a tree with defendant inside. The driver's door was open, and no one else was in the vehicle. Mr. Morawski went to defendant, assessed his injuries and proceeded to treat him. Mr. Morawski was inside the vehicle to the extent necessary to place a cervical collar on defendant. He could not recall seeing any glassware or narcotics in the vehicle.

According to Mr. Morawski, there were no conversations between defendant and the police between the time he arrived and the time defendant was placed in the ambulance. Nor were there any conversations between the police and Mr. Morawski during the time between defendant being placed in the ambulance and his being transported to the hospital. Mr. Morawski was never told at the scene that defendant was under arrest, and defendant was never told he was under arrest in Mr. Morawski's presence. He could not recall defendant ever granting anyone permission to search his vehicle.

On cross-examination, Mr. Morawski stated that the only observations he made of the interior of defendant's vehicle were to see if the steering wheel and windshield were intact and whether defendant was

wearing a seat belt. Although he could not recall obtaining any identification from defendant, he assumed that they got defendant's name and address from him verbally. He added that he never left defendant's side while at the accident scene. He could not recall a police officer asking defendant for his driver's license. He stated that police officers were present in the area of defendant's vehicle while he was treating defendant.

Charles Faivre, another paramedic, also participated in the care and treatment of defendant at the scene. He and Mr. Morawski arrived shortly before the police. According to Mr. Faivre, he never heard defendant grant consent to search his vehicle. There were also no discussions in his presence concerning authorization by defendant to go through the car. He did not believe that at any time defendant told the police to enter his vehicle and take anything out. He could not recall seeing any glassware in the vehicle and did not remember specifically what he saw in the vehicle. He did not see any pipes within the vehicle.

During cross-examination, Mr. Faivre stated he did not really focus his attention on the items in defendant's vehicle. He recalled clutter in the front seat area although he did not remember what it was.

Following denial of its motion for a directed finding, the State presented its evidence. The first witness to testify was Officer Ron Fuqua of the Wheaton police department. Officer Fuqua stated that upon arriving at the accident scene he observed defendant's vehicle resting against a tree and defendant seated in the driver's seat. Defendant was eventually removed from his vehicle by paramedics. While defendant was in the ambulance, Officer McGinley had a conversation with defendant. Officer Fuqua was outside the ambulance, and the paramedics were in the ambulance with defendant and Officer McGinley at the time of the conversation.

Following the conversation between Officer McGinley and defendant, Officer Fuqua entered defendant's vehicle and located his wallet and driver's license between the seats. While recovering defendant's wallet, he observed a console in the dashboard with its door ajar. He observed within the console what looked to him to be a "glass smoking pipe." While retrieving the glass pipe, he also observed a brown, glass vial containing a white, powdery substance inside the compartment.

Officer Fuqua then checked around the interior of the vehicle and discovered a folded bundle of cash under the driver's seat with a rubber band around it. He next observed a clear, cellophane bag in an open console between the seats. That bag contained several small

pills, a partially burned, hand-rolled cigarette and a small amount of a green, leafy plant substance. He stated that he had training in the area of narcotics paraphernalia and that, based on his prior training and experience, he believed that everything except the cash was paraphernalia for the ingestion of narcotics. After recovering these items, he then searched the entire vehicle. He recovered certain other items which he did not identify.

Subsequent to recovery of these various items from defendant's vehicle, Officer Fuqua arranged to have the vehicle towed. He stated that the Wheaton police department tows inoperable vehicles. He testified that the Wheaton police department has a policy that requires an officer to check the interior of a vehicle to secure items of value.

On cross-examination, Officer Fuqua conceded that defendant was not under arrest at the time he was placed in the ambulance or at the time the ambulance left. He also admitted that he did not have written consent from defendant to enter the vehicle. He also did not have a warrant when he searched defendant's vehicle.

Officer Fuqua also stated that he had no verbal or written consent to open any compartments within the vehicle. He reiterated that the console was open to the extent he could observe a glass smoking pipe through the opening although he could not state to what extent the console was open. The initial purpose of his entry into the vehicle was not for towing or inventorying it but rather for obtaining a license. Finally, Officer Fuqua testified that it was his custom and practice to look at the interior of a vehicle whenever it is in an accident.

The other witness for the State was Officer James McGinley of the Wheaton police department. He testified that he had a conversation with defendant in the rear of the ambulance wherein he asked defendant where his driver's license was. According to Officer McGinley, defendant responded that his driver's license was between the seats of his vehicle, and he asked Officer McGinley to go get it. At that time, Officer Fuqua approached the rear of the ambulance, and Officer McGinley told him where the driver's license was. Officer McGinley also stated that there were two paramedics in the rear of the ambulance when he discussed with defendant the whereabouts of his driver's license.

During cross-examination, he admitted that defendant was not yet under arrest when he was in the ambulance. He also had no suspicions at that time that the vehicle contained any contraband. He denied telling Officer Fuqua to search the vehicle.

Following Officer McGinley's testimony, the defendant moved for a directed finding. After hearing arguments, the court denied the mo-

tion to suppress. Defense counsel then pointed out that he had moved for a directed finding and had not yet offered any evidence in rebuttal. The court then denied the motion for a directed finding and allowed defendant to proceed with rebuttal.

The defendant testified on his own behalf in rebuttal. The defendant denied that there were any open compartments on his dashboard following the accident. He had glassware in his glove compartment, but the glove compartment was closed before and after the accident.

The defendant could not recall Officer McGinley entering the ambulance, nor did he recall having any conversation with him regarding whether he had his driver's license with him. He did not remember Officer McGinley asking him to enter his vehicle or asking him for his driver's license. He denied ever telling either Officer Fuqua or Officer McGinley to go in his vehicle and get his driver's license. Furthermore, he never gave them consent to enter his vehicle and never directed them to get his driver's license. On cross-examination, he described the center console between the two seats as not being a closed compartment. According to defendant, he looked for damage to the interior of his vehicle following the accident, and he specifically remembered inspecting the compartment that Officer Fuqua stated was ajar and that the compartment was closed. The defendant did remember giving the officers his name and address but reiterated not remembering being asked for his driver's license. The court denied defendant's motion to suppress.

The court eventually conducted a stipulated bench trial wherein defendant and the State stipulated that the officers, following Officer Fuqua's observation of the glass smoking pipe, searched the rest of the interior of the vehicle. During that search, the officers discovered a bag containing a substance believed to be cannabis, a razor blade, a box of plastic baggies, and a vinyl tote bag with a large quantity of a white, powdery substance and a scale inside. The parties further stipulated that the white, powdery substance weighed 32.78 grams and tested positive for the presence of cocaine.

The court found defendant guilty and sentenced him to a six-year term of imprisonment. Defense counsel then made an oral, post-trial motion objecting to the denial of defendant's motion to suppress. The State objected to the motion being oral. The trial court denied the post-trial motion, and defendant filed a timely notice of appeal.

The State initially suggests that defendant has waived consideration of the trial court's denial of his motion to suppress evidence by only raising the issue in an oral post-trial motion. Defendant responds that the filing of a written, post-trial motion is unnecessary following

a bench trial if the error was brought to the attention of the trial court.

Our supreme court, in *People v. Enoch* (1988), 122 Ill. 2d 176, clarified the necessity of raising alleged errors in a written, post-trial motion. The court held that both a trial objection and a written, post-trial motion raising the issue are required for alleged errors that could have been raised during trial, whether the trial was a bench trial or a jury trial. (*Enoch*, 122 Ill. 2d at 186-88.) Furthermore, the court held that when a defendant fails to comply with the requirement of filing a written, post-trial motion, the reviewing court is limited to consideration of constitutional issues properly raised at trial and which can be raised later in a post-conviction hearing petition, issues regarding sufficiency of the evidence and plain error. (*Enoch*, 122 Ill. 2d at 190.) The *Enoch* court went on to consider the denial of the defendant's motion to suppress statements made by him after his arrest even though he did not raise the propriety of that denial in a written, post-trial motion. *Enoch*, 122 Ill. 2d at 192.

█ In the present case, the defendant raised the issue in an oral, post-trial motion. While an oral, post-trial motion may be sufficient to preserve an issue for review where the State does not object to the oral motion (*Enoch*, 122 Ill. 2d at 188), here the State objected to the motion being made orally. Therefore, we cannot consider the issue under that exception to the requirement of a written, post-trial motion.

However, we can consider the issue under the constitutional issue exception to the waiver rule. The denial of a defendant's motion to quash an arrest and suppress evidence is reviewable under *Enoch* even though a defendant failed to allege the error with specificity in his post-trial motion. (*People v. Follins* (1990), 196 Ill. App. 3d 680, 691-92.) Consequently, as the question of the denial of defendant's motion to suppress in this case is of a constitutional magnitude, we will consider it even though it should have been raised in a written, post-trial motion.

We turn then to the issue of whether the trial court properly denied defendant's motion to suppress evidence. In that regard, defendant argues that the search in this case cannot be justified as an automobile exception under the fourth amendment because the vehicle lacked mobility due to its being not drivable and the owner being unable to drive it. The defendant also maintains that the search is not justifiable under the plain view doctrine because there is conflicting evidence as to whether the police had a right to be in defendant's vehicle and because the discovery of the evidence was not inadvertent but rather the product of the police custom of looking through vehi-

cles involved in accidents. Additionally, defendant asserts that the search was not a proper inventory search because the police were without authority to take custody and control of his vehicle. Finally, defendant argues that the fruits of any inventory search should be suppressed because an inventory search was a pretext for the police searching his vehicle.

The State responds that the search of defendant's vehicle was proper because Officer Fuqua's observation of the glass smoking pipe in defendant's glove compartment was justified under the plain view doctrine.

We begin our analysis by explaining what is not at issue in this case. This is not a "plain view" case as that term is used in fourth amendment jurisprudence. The plain view doctrine permits the warrantless *seizure* of evidence under certain circumstances. (*Arizona v. Hicks* (1987), 480 U.S. 321, 326, 94 L. Ed. 2d 347, 354, 107 S. Ct. 1149, 1153.) Additionally, if a seizure of an item is justified under the plain view doctrine so is a "search" of that item. (*Hicks*, 480 U.S. at 326-28, 94 L. Ed. 2d at 354-56, 107 S. Ct. at 1153-54.) In this case, defendant was convicted of unlawful possession of cocaine with the intent to deliver. He was not charged with nor convicted of unlawful possession of the glass smoking pipe seized from his glove compartment. While the plain view doctrine might justify the seizure of the pipe, or an inspection of it, it would not justify, standing alone, any subsequent search of defendant's vehicle.

We are also careful to emphasize that a search of defendant's vehicle occurred following the observation of the glass smoking pipe. Defendant and the State stipulated at the bench trial that the officers searched the interior of defendant's vehicle and discovered a white, powdery substance, a razor blade, plastic baggies and a scale. Furthermore, once Officer Fuqua concluded that the glass smoking pipe constituted paraphernalia used for ingesting narcotics, any observation of additional contraband would be difficult to characterize as "inadvertent" for purposes of a plain view analysis.

We must consider then whether the warrantless search of defendant's vehicle, following Officer Fuqua's observation of the glass smoking pipe, was justified under the fourth amendment. A warrantless search of a vehicle is reasonable under the fourth amendment where the police have probable cause to believe the vehicle contains contraband. (*United States v. Ross* (1982), 456 U.S. 798, 805, 72 L. Ed. 2d 572, 581, 102 S. Ct. 2157, 2162.) Furthermore, the scope of such a warrantless search encompasses every part of the vehicle and its contents that may conceal the object of the search. (*Ross*, 456 U.S. at

825, 72 L. Ed. 2d at 594, 102 S. Ct. at 2173.) Thus, we must necessarily determine whether Officer Fuqua had probable cause to believe defendant's vehicle contained contraband. To answer that inquiry, we must first decide the more narrow question of whether Officer Fuqua was lawfully within defendant's vehicle when he made those observations which did or did not give rise to the probable cause necessary to search defendant's vehicle. This is so because there is no evidence that Officer Fuqua had probable cause that the vehicle contained contraband prior to his entering it.

We turn then to the question of whether Officer Fuqua lawfully entered defendant's vehicle in the first instance. In that regard, Officer McGinley testified that he asked defendant where his driver's license was and defendant responded that it was between the seats of his vehicle and asked Officer McGinley to retrieve it. Officer McGinley in turn advised Officer Fuqua regarding the location of defendant's driver's license. Officer Fuqua then entered defendant's vehicle to obtain the license. Defendant denied telling Officer McGinley where his driver's license was or requesting him to retrieve it. Additionally, one of the paramedics testified that he did not recall a police officer asking defendant for his driver's license. The other paramedic stated that there were no discussions in his presence regarding defendant giving anyone permission to go through his vehicle, and he did not believe that at any time defendant told the police to enter his vehicle and remove anything.

The trial court chose to discredit defendant and his witnesses and accept the officers' version regarding defendant's driver's license. At a hearing on a motion to suppress, the trial court's function is to weigh the credibility of the witnesses and to resolve any conflicts in their testimony. (*People v. Lucas* (1986), 140 Ill. App. 3d 1, 11.) We will not disturb the trial court's findings in that regard unless they are against the manifest weight of the evidence. (*Lucas*, 140 Ill. App. 3d at 11.) Having observed the witnesses, their demeanor, candor and sincerity, the trial court is in a far better position than we are to weigh their testimony. (*Lucas*, 140 Ill. App. 3d at 11.) There is no basis in the record before us to conclude that the trial court's decision to believe the officers and disregard defendant's version of the facts was against the manifest weight of the evidence.

■ Relying on the fact that defendant told Officer McGinley that his driver's license was between the seats of his vehicle and that he asked him to get it, we conclude that Officer Fuqua was authorized to be inside of defendant's vehicle for the purpose of obtaining defendant's driver's license from between the seats. Once lawfully inside the

vehicle, the officer could develop probable cause based on his observations therein. (See *People v. Clark* (1989), 185 Ill. App. 3d 231, 239.) We are careful to note that defendant's authorization of the officers to enter his vehicle to retrieve his driver's license from between the seats would not justify the police in searching defendant's vehicle beyond the extent reasonably necessary to locate defendant's driver's license. On the other hand, Officer Fuqua was not required to ignore his observations of items which he could readily view from a place he was authorized to be. Again, there is no basis in the record to interfere with the trial court's conclusion that the glove compartment door was ajar and that Officer Fuqua could view the pipe without opening the door further.

■ We next address the issue of whether Officer Fuqua's observation of the glass smoking pipe constituted probable cause to believe the vehicle contained contraband. In that regard, Officer Fuqua testified that he had training in the area of narcotics paraphernalia and that he believed, based on his training and experience, that the glass smoking pipe, among other things, was paraphernalia used for ingesting narcotics.

Our research indicates no Illinois case directly addressing the issue of whether the observation by a police officer of a glass smoking pipe associated with narcotic ingestion is sufficient to give rise to probable cause. There are several cases where the appellate court has held that the presence of drug paraphernalia, along with a substance appearing to be an illicit drug, constitutes probable cause. (See *People v. Hill* (1988), 169 Ill. App. 3d 901 (probable cause to search based on observation of white powder, scale and numerous small packets); *People v. Ledwa* (1980), 81 Ill. App. 3d 276 (probable cause to search where officers viewed substance believed to be LSD plus marijuana paraphernalia); *People v. Hester* (1974), 22 Ill. App. 3d 118 (probable cause to search premised on officers' observations of hash pipes and marijuana).) Moreover, one appellate opinion has held that a police officer had probable cause to seize and open a tin foil packet which he believed contained narcotics based on his training and experience in the detection of narcotics. *People v. Zozak* (1981), 101 Ill. App. 3d 590, 592-94.

In *People v. Stout* (1985), 106 Ill. 2d 77, our supreme court has stated that probable cause for searches and seizures must be determined from the standpoint of the arresting officer, with his skill and knowledge, rather than from the standpoint of the average citizen under similar circumstances. (106 Ill. 2d at 86; see also *Texas v. Brown* (1983), 460 U.S. 730, 742, 75 L. Ed. 2d 502, 514, 103 S. Ct. 1535,

1543 (trained eye of police officer critical to probable cause determination).) Furthermore, police officers must often act upon a quick appraisal of the data before them, and the reasonableness of their conduct must be judged on the basis of their responsibility to prevent crime and apprehend criminals. *Stout*, 106 Ill. 2d at 86-87.

In the present case, Officer Fuqua testified that he observed a glass smoking pipe in the glove compartment of defendant's vehicle. While such an observation, standing alone, may be insufficient to establish probable cause, it becomes sufficient when combined with Officer Fuqua's testimony that he had been trained regarding narcotics paraphernalia and that based on his training and experience he believed the pipe constituted paraphernalia used for ingesting narcotics. See *Stout*, 106 Ill. 2d at 87; see also *People v. Wright* (1980), 80 Ill. App. 3d 927, 931 (mere observation of hand-rolled cigarette, without evidence of officer's expertise or ability to identify marijuana cigarette by sight, does not provide probable cause).

Once Officer Fuqua had probable cause to believe the vehicle contained contraband related to narcotics use, he was authorized to search every part of the vehicle and its contents that could have concealed narcotics. (See *Ross*, 456 U.S. at 825, 72 L. Ed. 2d at 594, 102 S. Ct. at 2173.) Thus, the remaining items discovered by Officer Fuqua, including the cocaine, were admissible as the fruits of a valid search. Because the search of defendant's vehicle was based on probable cause to believe it contained contraband, we need not address the issue of whether the search was a proper inventory search.

■ At this point, we must mention defendant's argument that the search of his vehicle could not be justified under the automobile exception to the warrant requirement because it was not mobile and he was incapable of driving it at the time of the search. While suggesting an interesting fourth amendment issue, such an argument must fail as the record here does not support defendant's necessary contention that the vehicle lacked inherent mobility. There is simply no evidence which establishes that defendant's vehicle was incapable of being driven. The mere fact that it struck a tree does not prove it was incapacitated. Nor does the fact that the police towed the vehicle establish that it was inoperable. The police may have had the vehicle towed for other reasons, such as a desire to remove it from private property or to secure it. Likewise, the mere fact that defendant was removed from the scene in an ambulance does not preclude the possibility that someone else such as a member of defendant's family or a friend of defendant might have removed the vehicle. Absent evidence that defendant's vehicle was in fact incapable of being moved, we are

in no position to reach the issue of what significance, if any, such immobility has on the automobile exception to the warrant requirement.

For the foregoing reasons, we conclude the order of the circuit court of Du Page County denying defendant's motion to suppress evidence was not manifestly erroneous and accordingly affirm the judgment of the trial court.

Affirmed.

NICKELS and INGLIS, JJ., concur.