2021 IL App (1st) 190134-U

THIRD DIVISION
June 30, 2021

1-19-0134

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 18 CR 05613 |
| | ) | |
| MICHAEL CRUMP, | ) | Honorable |
| | ) | Angela Munari Petrone, |
| Defendant-Appellant. | ) | Judge Presiding. |

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Burke concurred in the judgment.

ORDER

¶ 1    *Held:* The trial court properly denied defendant's motion to suppress evidence of the gun because the search of his drawstring bag was justified under the automobile exception.

¶ 2    Following a jury trial, defendant Michael Crump was found guilty of being an armed habitual criminal and sentenced to nine years' imprisonment followed by three years of mandatory supervised release. On appeal, defendant contends the trial court erred in denying his motion to suppress evidence because police lacked probable cause to search his drawstring bag during a traffic stop. We affirm.

¶ 3                                    BACKGROUND

¶ 4                                    Motion to Suppress Evidence

¶ 5          On March 26, 2018, police conducted a routine traffic stop of a car in which defendant was a back seat passenger. The officers arrested the driver of the car for driving on a suspended license and ticketed the passenger for open containers of alcohol in the center console. Defendant was arrested when a search for additional opened containers of alcohol led to the discovery of a gun in his drawstring bag. He filed a motion to suppress alleging the officers lacked probable cause to search his bag.

¶ 6          At the suppression hearing, Officer Francis Johnson testified about the circumstances surrounding his discovery of the gun in defendant's bag. On the evening of March 26, 2018, he was on routine patrol in an unmarked police car with his partner, Officer Klaus, and a sergeant. Around 8:30 p.m., he stopped a Pontiac Bonneville that made a right turn from Augusta Boulevard onto Keystone Avenue without signaling.

¶ 7          Johnson approached the driver's side of the Bonneville. His partner approached the passenger's side. Defendant was seated behind the front passenger and leaning toward the space behind the driver's seat. The front seat passenger appeared intoxicated and was yelling. Johnson smelled and saw two cups of alcohol in the center console. Based on those observations, he asked everyone to step out of the car. The driver exited the car promptly, but the passengers did not. Officer Klaus opened the rear passenger door and asked defendant again to get out of the car. When defendant continued leaning into the area behind the driver's seat, Klaus unholstered her gun and repeated her request. Then defendant showed his hands and exited the car. Klaus moved defendant to the rear of the car and handcuffed him to the driver. The young lady in the front passenger's seat got out of the car eventually and was handcuffed to defendant.

¶ 8    Johnson testified he and his partner then searched the car for the source of the open containers of alcohol. His partner found a bottle of alcohol on the front passenger's floorboard. Meanwhile, he saw a black drawstring bag on the back seat where defendant had been seated. He picked up the bag and felt a gun. When he opened the bag, there was a gun inside.

¶ 9    Johnson and his partner wore body cameras that recorded their encounter with defendant and the footage was played for the court. The footage from Johnson's body camera shows Officer Klaus asking defendant several times to get out of the car; when defendant complies, he steps out of the car with his back toward her. The footage from Klaus's body camera also shows her repeatedly asking defendant to exit the vehicle as he kept his back toward her. When Klaus draws her gun and repeats her request, defendant backs out of the car with his hands out of Klaus's sight. Meanwhile, the young lady in the front passenger seat is upset and yelling. Klaus helps the young lady out of the car and explains, "we're not worried about the liquor right now, we're worried about other things." Johnson testified he issued the young lady a citation for the open containers of alcohol but did not arrest her.

¶ 10    On cross-examination, Johnson testified defendant was arrested for the gun found inside his drawstring bag and the driver was arrested for driving on a suspended license. Although driving on a suspended license required the vehicle to be impounded, Johnson did not recall whether an open-container violation required a tow or impoundment. An inventory search of the vehicle is required in both scenarios. He acknowledged his partner commented on the black drawstring bag but clarified she did not mention anything until after he picked it up and felt the weight and profile of a gun. Based on his experience with guns, he instantly recognized the weight and profile of a gun inside the drawstring bag.

¶ 11 On redirect examination, Johnson testified he did not smell alcohol on the driver or defendant. He arrested defendant after finding the gun. Then, he arrested the driver for driving on a suspended license. At that point, he determined the vehicle had to be towed.

¶ 12 Defendant testified he was seated in the back seat behind the front passenger when the car was stopped by police. His drawstring bag was on his left side. On cross-examination, he denied reaching for his bag but admitted he owned the gun found inside.

¶ 13 The defense rested and the trial court heard arguments on the State's request for a directed finding. The State argued the officers were entitled to search defendant's bag for alcohol based on the open containers in the center console and how defendant exited the car with his back turned to Officer Klaus. The State also argued the officers were entitled to conduct an inventory search of the vehicle interior before it was towed, and Officer Johnson recognized there was a gun inside the bag when he felt the weight and profile of a gun. The State further argued it did not matter if the officers only realized a tow was required after they searched the vehicle and found the gun. The State reasoned 625 ILCS 5/6-303(e) required the tow and the officers would have inevitably discovered the gun during the inventory search.

¶ 14 Defendant argued the inevitable discovery doctrine was not applicable unless the court found a violation of defendant's fourth amendment rights. Defendant also argued the gun was not in plain view of the officers and there was no reason to search his bag because he did not smell of alcohol. Yet Officer Klaus tells the young lady they are worried about something other than alcohol.

¶ 15 The court denied defendant's motion to suppress evidence. In doing so, the court acknowledged defendant was not intoxicated but noted he ignored lawful requests to exit the vehicle and then kept his back toward Officer Klaus when he ultimately complied. The court

stated defendant's movements, which obscured his hands, led Officer Klaus to reasonably believe defendant could be armed and dangerous. According to the court, Officer Johnson's search of defendant's bag was lawful and related to concerns for officer safety. The court also stated the officers would have inevitably discovered the gun during the inventory search of the car before it was towed.

¶ 16                                                   Jury Trial

¶ 17        At trial, Officer Johnson testified similarly as before at the hearing on defendant's motion to suppress evidence. He added the odor of alcohol persisted even after the discovery of the bottle of liquor on the front passenger's floorboard. Moreover, based on his service in the Marines and his experience as a police officer, he knew there was a gun inside the drawstring bag when he felt its weight and profile. Before inventorying the gun, he made sure the chamber was empty and removed the magazine of live ammunition.

¶ 18        Officer Diana Klaus testified she asked defendant to get out of the car before the young lady in the front passenger's seat because his behavior made her nervous. Defendant ignored her requests to exit the car. He kept his back turned and moved his arms "trying to conceal something." Defendant complied when Klaus unholstered her gun and asked again. Klaus explained she was trained to always keep the person's hands in view and if the person refuses to show their hands, that could be a threat. She also identified the loaded .45 caliber Colt Combat Commander that was found inside defendant's drawstring bag.

¶ 19        On cross-examination, Klaus acknowledged she was able to see defendant's hands when she first approached the car. She conceded defendant had his back toward her because his knees were pointed toward the driver's seat. Defendant sat behind the front passenger whose seat was

fully reclined, and that required defendant to move his arms to back out of the car. She explained on redirect examination it was systematic to search the vehicle from front to rear.

¶ 20 Robert Franks, a fingerprint evidence technician, examined the gun including the live rounds of ammunition in its magazine. He recovered no fingerprints. Katie Anello, a firearms evidence technician, test fired the gun successfully.

¶ 21 Then, the parties stipulated that defendant had previously been convicted of two qualifying felony offenses. After the State rested its case in chief, defendant moved for a directed verdict, which the trial court denied. Defendant chose not to testify and rested.

¶ 22 Following closing arguments, the jury found defendant guilty of being an armed habitual criminal. Defendant filed a motion for a new trial objecting to the denial of his pretrial suppression motion, which the trial court denied after a hearing. The court then sentenced defendant to nine years' imprisonment and three years of mandatory supervised release.

¶ 23 ANALYSIS

¶ 24 Crump now contends the trial court erred in denying his motion to suppress evidence because the officers lacked probable cause to search his drawstring bag during the traffic stop. Crump concedes the officers lawfully stopped the car for a traffic violation then ordered everyone out and handcuffed them for safety concerns. However, he argues the traffic stop does not entitle the officers to search the entire vehicle.

¶ 25 Although the automobile exception permits the warrantless search of a vehicle with probable cause, Crump asserts the permissible scope of that search is confined to the areas where the object sought may be found. He argues Officer Johnson was limited to those places where a bottle of alcohol may be found. In other words, once the officers found a bottle of alcohol on the front passenger's floorboard, there was no justification for searching his bag on the back seat. He

reasons the officers articulated no reason to believe they would find additional alcohol in his bag. He further argues neither concerns for officer safety nor the inevitable discovery doctrine justify the search of his bag.

¶ 26    The State maintains the automobile exception allowed the officers to search anywhere in the vehicle including the passenger compartment for additional opened containers of alcohol. The "automobile exception" allows police to search a vehicle without a warrant if there is probable cause to believe the vehicle contains evidence of criminal activity subject to seizure. *People v. James*, 163 Ill. 2d 302, 312 (1994). The State reasons the officers were not required to end their search after finding a bottle of alcohol on the front passenger's floorboard. See *People v. McGhee*, 2020 IL App (3d) 180349, ¶ 35 (police officers had probable cause to continue search for additional alcohol after one bottle had been found).

¶ 27    The State also argues the officers were allowed to conduct a protective search for weapons in defendant's bag based on a reasonable belief he was armed and dangerous. Alternatively, the State argues the officers would have inevitably discovered the gun during the inventory search necessitated by the vehicle tow.

¶ 28    In reviewing a trial court's ruling on a motion to suppress, we will uphold the court's findings of historical fact unless they are against the manifest weight of the evidence. *People v. Lee*, 214 Ill. 2d 476, 483 (2005). We remain free, however, to assess the facts relative to the issues presented and to draw our own conclusions when deciding what relief should be granted. *Id.* at 484. We thus review *de novo* the ultimate question of whether the evidence should be suppressed. *Id.* In doing so, we may consider evidence presented at the suppression hearing and at trial when reviewing the propriety of a trial court's ruling on a motion to suppress. *People v. Almond*, 2015 IL 113817, ¶ 55.

¶ 29    The United States and Illinois constitutions protect individuals from unreasonable searches and seizures. U.S. Const., amend. IV; Ill. Const. 1970, art. I, § 6. A warrantless search is usually *per se* unreasonable. *People v. Hill*, 2020 IL 124595, ¶ 20 (citing *Mincey v. Arizona*, 437 U.S. 385, 390 (1978)). However, a warrantless search of an automobile is not *per se* unreasonable given its transient nature. *Id.* ¶ 21.

¶ 30    This "automobile exception" allows police to search a vehicle without a warrant based on probable cause to believe the vehicle contains evidence of criminal activity subject to seizure. *James*, 163 Ill. 2d at 312. Stopping a vehicle for a minor traffic violation, however, does not justify searching the detainee's person or vehicle; rather, police officers must reasonably believe they are facing a situation more serious than a routine traffic violation. *People v. Contreras*, 2014 IL App (1st) 131889, ¶ 28 (citing *People v. Jones*, 215 Ill. 2d 261, 271 (2005)).

¶ 31    Police officers have probable cause to search a vehicle where the totality of the circumstances known at the time of the search, in view of their experience, would cause a reasonably prudent person to believe a crime occurred and that evidence of the crime is contained in the vehicle. *People v. Parker*, 354 Ill. App. 3d 40, 45 (2004) (citing *People v. Stout*, 106 Ill. 2d 77, 86 (1985); *People v. Clark*, 92 Ill. 2d 96, 100 (1982); and *People v. Erickson*, 31 Ill. 2d 230, 233 (1964)). The scope of that search "extends to every part of the vehicle and its contents that may conceal the object of the search." *Id.* (citing *People v. Schrems*, 224 Ill. App. 3d 988, 995-96 (1992); and *People v. Beil*, 110 Ill. App. 3d 291, 293 (1982)). The Supreme Court has held that police officers with probable cause to search a vehicle may inspect a passenger's belongings that can conceal the object of the search. See *People v. Morales*, 343 Ill. App. 3d 987, 994 (2003) (citing *Wyoming v. Houghton*, 526 U.S. 295, 307 (1999)).

¶ 32    We find the officers were justified under the automobile exception to search defendant's drawstring bag for additional opened containers of alcohol. The Illinois Vehicle Code prohibits transporting, carrying, or possessing any alcohol within the passenger area of a motor vehicle except in the sealed original container. See 625 ILCS 5/11-502(a), (b) (West 2018). Officer Johnson testified at the suppression hearing that he smelled and saw two cups of alcohol in the center console and the front seat passenger appeared intoxicated and was yelling. At that moment, the officers reasonably believed they were confronting a situation more serious than a routine traffic violation. See *Contreras*, 2014 IL App (1st) 131889, ¶ 28. The officers had probable cause to believe the vehicle contained evidence of an open container violation, and under the automobile exception, they could search any part of the passenger area for opened containers of alcohol including defendant's drawstring bag in the back seat. See *McGhee*, 2020 IL App (3d) 180349, ¶ 35 (the officers had probable cause to search a locked glove compartment for bottles of beer that could be opened and resealed).

¶ 33    In so finding, we are unpersuaded by defendant's argument that there was no justification to search his bag on the back seat after the officers found a bottle of alcohol on the front passenger's floorboard. Defendant's argument presumes the officers had no reason to believe they would find additional alcohol in his bag. The officers had no obligation to assume that no additional opened and resealed containers of alcohol were inside the car. See *McGhee*, 2020 IL App (3d) 180349, ¶ 36 (officers were not obligated to assume no additional open containers of alcohol were inside the vehicle).

¶ 34    As our resolution under the automobile exception is dispositive, we need not consider whether the search of defendant's bag was also permissible as a protective search for weapons

under *Terry v. Ohio* or under the doctrine of inevitable discovery. However, we will briefly comment on those issues.

¶ 35      Under *Terry* and Illinois law, an officer may conduct a brief investigatory stop or detention of an individual upon a reasonable suspicion, based on specific facts and reasonable inferences, the individual has committed or is about to commit a crime. *People v. Johnson*, 387 Ill. App. 3d 780, 788 (2009) (citing *Terry*, 392 U.S. at 20-23; 725 ILCS 5/107-14 (West 2006)). In *Michigan v. Long*, the Supreme Court extended the *Terry* protective search of a person to the passenger compartment of a vehicle where the officer reasonably believes the occupant is dangerous and could gain immediate control of a weapon. *Id.* at 789 (citing *Long*, 463 U.S. 1032, 1049 (1983)); see also *People v. Colyar*, 2013 IL 111835, ¶ 38. The Court stated the justification for a protective search of a vehicle is not diminished simply because the officer has the person's movement under control. *Id.* (construing *Long*, 463 U.S. at 1051-52). The Court stated the person may try to break away from the officer's control and retrieve a weapon from the vehicle, or if not arrested, the person may return to the vehicle and gain access to any weapon inside. *Id.* (citing *Long*, 463 U.S. at 1051-52).

¶ 36      Here, the totality of the circumstances confronting Officer Klaus warranted her belief that her safety or that of others was in danger. See *Johnson*, 387 Ill. App. 3d at 788-89 (whether a protective search is proper is an objective test: would a reasonably prudent person under the circumstances believe her safety, or the safety of others, is in danger?). Defendant cites various cases where factors such as refusing to cooperate, furtive movements, or lateness of the hour, without more, did not give rise to a reasonable suspicion the person is armed with a weapon. However, the basis for reasonable suspicion is assessed upon the totality of the circumstances facing the officers. *People v. Evans*, 2017 IL App (4th) 140672, ¶ 45. In this case, the officers

decided to search defendant's bag based on the quantum of facts they faced, including the lateness of the hour, the presence of multiple occupants and open containers of alcohol, and defendant's refusal to get out of the car and keep his hands visible. See *id.* ¶¶ 45-47. Moreover, defendant's point that all the occupants of the car were handcuffed at the rear of the car when Officer Johnson searched defendant's bag ignores the Supreme Court's observation that the justification for a protective search of a vehicle is not diminished simply because the officer has the person's movement under control; all the occupants of the car were detained at the rear of the car and within reach of the interior. *Johnson*, 387 Ill. App. 3d at 789 (construing *Long*, 463 U.S. at 1051-52). Having found no violation of the fourth amendment under the totality of the circumstances, we have no reason to consider the parties' alternative arguments about the application of the inevitable discovery doctrine. See *People v. James*, 2021 IL App (1st) 180509, ¶ 36 (we need not discuss the parties' alternative arguments about the inevitable discovery doctrine where there was no fourth amendment violation).

¶ 37                                    CONCLUSION

¶ 38        We conclude the trial court properly denied defendant's motion to suppress evidence of the gun because the search of defendant's drawstring bag was justified under the automobile exception. Accordingly, we affirm the trial court's denial of defendant's motion.

¶ 39        Affirmed.