2020 IL App (3d) 180349

Opinion filed December 3, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 14th Judicial Circuit, Rock Island County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-18-0349 Circuit No. 16-CF-805 |
| ANTONIO McGHEE, | ) ) ) | Honorable Norma Kauzlarich |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justice O'Brien concurred in the judgment and opinion.
Justice Holdridge dissented, with opinion.

**OPINION**

¶ 1        Defendant, Antonio McGhee, appeals his convictions for unlawful use or possession of

weapons by a felon (UUWF) and armed habitual criminal (AHC). Defendant argues that (1) the

Rock Island circuit court erred in denying his motion to suppress evidence after police officers

searched a locked glove compartment in a vehicle he was driving, and (2) his Iowa conviction

for second degree burglary was not a proper predicate offense for the charge of AHC. We affirm

in part, reverse in part, and remand.

¶ 2                                I. BACKGROUND

¶ 3		Defendant was charged with UUWF (720 ILCS 5/24-1.1(a) (West 2016)). The State later added the charge of AHC (*id.* § 24-1.7(a)). That charge alleged that defendant knowingly possessed a firearm after having been twice convicted of burglary, a forcible felony. The information indicated that one of defendant's prior burglary convictions was a 2009 Illinois conviction and the other was a 2010 Iowa conviction.

¶ 4		Defendant filed a motion to suppress a gun recovered in a search of a vehicle he had been driving. Defendant alleged that the gun was discovered in a locked glove compartment. Defendant argued that the search of the glove compartment was illegal because the officers did not have a warrant, he did not consent, and there was no probable cause to search the glove compartment.

¶ 5		A hearing was held on the motion to suppress. Officer Steven Mumma testified that he and Officer Jonathan Shappard conducted a traffic stop on a vehicle after learning from another officer that it had committed a traffic violation. There were four people inside the vehicle. Defendant was the driver. While Mumma was still inside the squad car, he could see the front seat passenger looking around and reaching down between his feet several times. Mumma later said that this movement was consistent with putting something in the glove compartment.

¶ 6		When Mumma approached the vehicle, he observed that the front seat passenger had an open bottle of beer in his hand. He was drinking it while Shappard talked to defendant. Mumma also saw another open bottle of beer on the floor between the passenger's feet. The beer was still cold. Defense counsel asked Mumma if the movement he had earlier observed from the passenger could have been consistent with placing the beer between the passenger's feet. Mumma said that could have been part of it, but there was a lot of movement.

¶ 7        Mumma and Shappard had everyone exit the vehicle. Two other officers arrived and stood with the four occupants of the vehicle. Mumma and Shappard searched the vehicle for additional open containers of alcohol. Mumma explained that once he observed open containers of alcohol, he believed there was probable cause to search the vehicle for more evidence of that. They found a plastic bag, which had been between the passenger's feet. It contained three or four unopened bottles of Modelo beer. The bottles were not in a six-pack container.

¶ 8        The officers searched the glove compartment, which was in the same area Mumma saw the passenger reaching to when the vehicle stopped. Based on the dimensions of the glove compartment, a bottle of beer could have only been stored in the glove compartment on its side. Defense counsel asked Mumma what he would be looking for in the glove compartment as far as an open container of alcohol given the dimensions of the glove compartment. Mumma replied, "These bottles could be resealed as far as the caps being screwed back on." The officers found a revolver and a large amount of counterfeit currency in the glove compartment. Mumma could not recall anyone giving them consent to search the glove compartment. Mumma believed that Shappard had placed handcuffs on defendant before the end of the search. The other passengers were handcuffed once the officers found the gun.

¶ 9        After the testimony, the parties agreed that the glove compartment was locked before the officers searched it.

¶ 10        The court issued a written order denying the motion to suppress. The court cited *United States v. Ross*, 456 U.S. 798, 823 (1982) for the proposition that an individual's expectation of privacy in a vehicle and its contents does not survive if there is probable cause to believe that the vehicle is transporting contraband. The court reasoned:

3

"In this case the officers had probable cause to search the vehicle once they observed the open alcohol within the passenger's compartment of the vehicle. That probable cause allowed them to search anywhere in the vehicle that an open can of beer could have been, which included the locked glove compartment."

¶ 11     Defendant filed a motion to dismiss the AHC charge. Defendant stated that his prior Iowa conviction was for burglary in the second degree. Defendant argued that this did not constitute a forcible felony under Iowa law. The court denied the motion.

¶ 12     The matter proceeded to a bench trial. Over defense counsel's objection, the court admitted a certified copy of defendant's 2010 Iowa conviction for second degree burglary. The court also took judicial notice of the fact that defendant was convicted of burglary in a 2009 Illinois case.

¶ 13     Mumma testified that, on the evening of the incident, he and Shappard conducted a traffic stop on a vehicle after another officer reported that the vehicle committed a traffic violation. As they were pulling the vehicle over, Mumma noticed furtive movements from the front seat passenger, who he later determined to be Brushey Pugh. Pugh moved back and forth and reached down in the area of his feet. The movements Pugh was making were consistent with trying to hide something. Mumma did not see the driver make any movements toward Pugh or the glove compartment.

¶ 14     The officers approached the vehicle. Defendant was driving, Pugh was in the front passenger seat. Pugh had "what appeared to be two open containers of Modelo beer." He was actively consuming one of the beers at the time the officers approached. Mumma and Shappard had everyone exit the vehicle, and they searched the vehicle for more open containers of alcohol. The officers located two open containers of Modelo beer and a few closed bottles of alcoholic

4

beverages on the front passenger-side floorboard. On cross-examination, defense counsel asked Mumma, "And [Pugh] had a six pack, probably with two missing, of beer between his legs?" Mumma responded, "Correct."

¶ 15     Mumma noticed that the glove compartment was locked. Shappard left to ask defendant for the key. The officers eventually retrieved a key and were able to open the glove compartment. The key that they used to open the glove compartment was on a key chain that was in the ignition at the time of the stop. The officers found a gun and a bundle of counterfeit currency inside the locked glove compartment. Mumma testified that four individuals were taken into custody as a result of the incident. There were at least five officers on the scene. Mumma identified the actual gun that he recovered from the vehicle. The gun was eventually admitted into evidence.

¶ 16     Shappard testified that, on the evening of the incident, he encountered defendant while conducting a traffic stop. When Shappard activated the lights on his squad car, he saw the front seat passenger reach forward. His head moved up and down, and it appeared that he was trying to hide something. Shappard approached the vehicle. Defendant was the driver of the vehicle, and Pugh was the front seat passenger. Mumma advised Shappard that the passenger had an open container of alcohol. Shappard testified that Pugh had two open bottles of Modelo beer in his hands. There was a shopping bag on the floor of the vehicle with four more sealed beers. They were in a six pack.

¶ 17     Shappard and Mumma had defendant and his three passengers exit the vehicle. There were additional officers on the scene who assisted them. Defendant shut the vehicle off, took the keys, and stepped out of the vehicle. Defendant was very cooperative at that point. Shappard searched the vehicle and learned that the glove compartment was locked. He asked defendant for

the keys to the glove compartment. Defendant became uncooperative and refused to give Shappard the keys. Shappard put defendant in handcuffs and retrieved the keys from his pocket. When asked if he physically placed defendant under arrest, Shappard stated, "I detained him, yes." Shappard testified that he used the same key that had been in the ignition to open the glove compartment. He found a firearm and a large amount of currency inside.

¶ 18    The parties stipulated that Pugh, the front-seat passenger in the vehicle during the incident, was taken into custody after the traffic stop. At the jail, a black key was found inside Pugh's right shoe. It was later determined that the key unlocked the doors of the vehicle and glove compartment in which the gun was found.

¶ 19    Matthew Durbin testified that he was an assistant public defender. He was assigned to represent Pugh on charges that arose out of the incident. Pugh gave Durbin a letter allegedly written by defendant. Durbin spoke with defendant, and defendant indicated he was willing to testify at Pugh's trial. Defendant indicated to Durbin that the gun was his. The court admitted the notarized letter into evidence. The letter stated that the gun belonged to defendant.

¶ 20    Defendant testified that, on the evening of the incident, he was driving a vehicle that he had borrowed from his sister. The gun that was introduced into evidence did not belong to him, and he had never seen it. Defendant did not know how Pugh obtained a key to the glove compartment. Defendant testified that he wrote the letter that was given to Durbin, but the statements in the letter were not true. He claimed that he owned the gun in the letter because he was receiving threats from gang members at the jail.

¶ 21    The court found defendant guilty of both offenses.

¶ 22    Defense counsel filed a motion to reconsider the guilty verdict arguing that the trial evidence was insufficient to prove defendant guilty beyond a reasonable doubt, defendant's Iowa

6

conviction for second degree burglary was not a forcible felony under Illinois law, and the confession letter should not have been admitted into evidence.

¶ 23   The court permitted defense counsel to withdraw after defendant claimed that he had been ineffective. The court appointed new counsel to represent defendant at sentencing. The court eventually allowed defendant to represent himself.

¶ 24   As a self-represented litigant, defendant filed a posttrial motion and an amended posttrial motion, which argued, among other things, that the court should have granted the motion to suppress and that any evidence obtained as a result of the search of the glove compartment must be suppressed. Defendant also noted that additional testimony presented at the trial was not presented at the suppression hearing.

¶ 25   Defendant filed a brief in support of his posttrial motion. Defendant stated that the officers testified at the trial that all the beers in the six pack had been accounted for before they searched the glove compartment. Defendant noted that this evidence had not been presented at the suppression hearing and argued that the court would have likely ruled in his favor if it had heard this evidence. Defendant also noted that the keys to the glove compartment were taken from his person.

¶ 26   At the hearing on defendant's posttrial motion, defendant argued that there was evidence presented at the trial that was not presented at the suppression hearing. Specifically, defendant stated that the court did not get to hear evidence at the suppression hearing that the key that opened the glove compartment was taken from him and that it was in the ignition the whole time. Defendant also noted that the court did not hear evidence at the suppression hearing that the officers "found all the liquor or the six pack container."

¶ 27    The court denied the amended posttrial motion. The court sentenced defendant to 10 years' imprisonment for AHC. The UUWF count merged.

¶ 28                                   II. ANALYSIS

¶ 29                              A. Motion to Suppress

¶ 30    Defendant argues that the circuit court erred in denying his motion to suppress the gun found in the locked glove compartment. Defendant contends that the officers' search of the locked glove compartment for open containers of alcohol was not justified because it was not reasonable to believe that open containers of alcohol would be found in the glove compartment where the officers had already accounted for all six bottles from the package. We find that the court properly denied defendant's motion to suppress because the officers had probable cause to search the glove compartment.

¶ 31    "A search conducted without prior approval of a judge or magistrate is *per se* unreasonable under the fourth amendment, subject only to a few specific and well-defined exceptions." *People v. Bridgewater*, 235 Ill. 2d 85, 93 (2009). Relevant to this appeal, these exceptions include (1) the automobile exception and (2) a search incident to arrest. See *id.*; *People v. James*, 163 Ill. 2d 302, 312 (1994). When reviewing a ruling on a motion to suppress evidence, we will reverse the factual findings of the circuit court only if they are against the manifest weight of the evidence. *Bridgewater*, 235 Ill. 2d at 92. However, we review *de novo* the circuit court's legal ruling as to whether the evidence should be suppressed. *Id.*

¶ 32    Defendant frames his argument on appeal as an argument that the search was unlawful because the search incident to arrest exception to the warrant requirement did not apply. However, defendant's brief also contains some discussion of probable cause to search and authority related to the automobile exception. The State's brief contains extensive citations to

authority concerning the automobile exception in support of its argument that the search of the vehicle was justified as a search incident to arrest. The circuit court's written order indicated that the court denied the motion to suppress upon finding that the automobile exception, rather than the search incident to arrest exception, applied. The substance of defendant's arguments as to why the court erred in denying the motion to suppress—namely, that the search of the locked glove compartment was unreasonable based on the circumstances known to the officers at the time of the search—apply to both exceptions. Accordingly, we consider both exceptions to the warrant requirement in our analysis.

¶ 33                                    1. *Automobile Exception*

¶ 34        We first consider whether the search of the locked glove compartment was justified under the automobile exception to the warrant requirement. "Under the automobile exception, law enforcement officers may undertake a warrantless search of a vehicle if there is probable cause to believe that the automobile contains evidence of criminal activity that the officers are entitled to seize." *James*, 163 Ill. 2d at 312. "To establish probable cause, it must be shown that the totality of the facts and circumstances known to the officer at the time of the search would justify a reasonable person in believing that the automobile contains contraband or evidence of criminal activity." *People v. Hill*, 2020 IL 124595, ¶ 23.

> "Probable cause deals with probabilities, not certainties. [Citation.] It is a flexible, commonsense standard that 'does not demand any showing that such a belief be correct or more likely true than false.' [Citation.] Therefore, probable cause does not require an officer to rule out any innocent explanations for suspicious facts. [Citation.] Instead, it requires only that the facts available to the officer—including the plausibility of an innocent explanation—would warrant a

9

reasonable man to believe there is a reasonable probability 'that certain items may be contraband or stolen property or useful as evidence of a crime.' " *Id.* ¶ 24 (quoting *Texas v. Brown*, 460 U.S. 730, 742 (1983)).

The scope of a warrantless search under the automobile exception "is defined by the object of the search and the places in which there is probable cause to believe that it may be found." *Ross*, 456 U.S. at 824.

¶ 35 We find that the search of the locked glove compartment for open containers of alcohol was justified under the automobile exception because the officers had probable cause to search the locked glove compartment for open containers of alcohol. Under section 11-502(a) of the Illinois Vehicle Code (625 ILCS 5/11-502(a) (West 2016)), "no driver may transport, carry, possess or have any alcoholic liquor within the passenger area of any motor vehicle upon a highway in this State except in the original container and with the seal unbroken." At the suppression hearing, Mumma testified that he observed the front seat passenger had one open bottle of beer in his hand and another between his feet. At that point, the officers had probable cause to believe that the vehicle contained evidence of the offense of illegal transportation of an open container of alcohol. Under the automobile exception, the officers were permitted to search any part of the passenger compartment of the vehicle where there was probable cause to believe that open containers of alcohol could be found, including the locked glove compartment. See *Ross*, 456 U.S. at 824. Notably, Mumma testified that an open bottle of beer that had been resealed could fit in the glove compartment on its side. Mumma also testified that he observed the front seat passenger make movements that were consistent with placing something in the glove compartment.

10

¶ 36    We reject defendant's argument that it was unreasonable for the officers to believe that open containers of alcohol would be found in the locked glove compartment because (1) all of the bottles of beer in the six pack had been accounted for before they searched the glove compartment and (2) any liquid inside an open container of alcohol would have spilled all over the interior of the vehicle if it were hidden in the glove compartment on its side.[1] The officers were not obligated to assume that no additional open containers of alcohol other than the six pack of beer were present in the vehicle. There could have been open containers of types of alcohol other than beer in the vehicle as well. Also, Mumma testified that the bottles of beer he observed could have been resealed by having the cap screwed back on and would have fit in the glove compartment on their sides.

¶ 37    We also reject the position taken by the dissent that the locked glove compartment was not part of the passenger area of the vehicle because it was locked and the only key known to the officers at the time of the search was in the ignition of the running car. The record contains no information as to when the glove compartment was locked or whether a key was necessary to initially lock the glove compartment. The glove compartment was directly in front of Pugh and within his reaching distance. Under these circumstances, the officers had probable cause to believe that the locked glove compartment was part of the passenger area of the vehicle such that any open containers of alcohol stored within it would have been contraband.

¶ 38    *2. Search Incident to Arrest*

---

[1]We note that Mumma testified at the suppression hearing that the unopened beers that the officers found in the vehicle were not part of a six pack container, but he and Shappard both indicated during their trial testimony that the beers were part of a six pack container. Defendant filed a posttrial motion seeking reconsideration of the court's suppression ruling based, in part, on the presentation of this additional evidence at trial. Accordingly, we may consider evidence presented at trial as well as at the suppression hearing in considering defendant's argument on appeal. See *People v. Gill*, 2018 IL App (3d) 150594, ¶ 76.

11

¶ 39        Having found that the search of the locked glove compartment was justified under the automobile exception, we need not consider whether it was also permissible under the search incident to arrest exception to the warrant requirement. However, we will briefly address this exception as well. Under the search incident to arrest exception, police officers may conduct a warrantless search of a vehicle incident to the recent arrest of an occupant when: "(1) the arrestee is unsecured and within reaching distance of the vehicle's passenger compartment at the time of the search; or (2) officers reasonably believe evidence relevant to the crime of arrest may be found in the vehicle." *Bridgewater*, 235 Ill. 2d at 94-95; see also *Arizona v. Gant*, 556 U.S. 332, 343 (2009). The parties agree that the first prong of the search incident to arrest exception does not apply. Therefore, the parties only dispute the second prong: whether the officers reasonably believed that evidence relevant to the offense of illegal transportation of alcoholic liquor could be found in the locked glove compartment.

¶ 40        As a threshold matter, in order for the search incident to arrest exception to apply to the officers' search for open containers of alcohol, there must have been a valid arrest for the offense of illegal transportation of alcoholic liquor. See *Bridgewater*, 235 Ill. 2d at 94-95; *People v. Arnold*, 394 Ill. App. 3d 63, 68 (2009). Defendant does not explicitly argue that he was arrested for this prior to the search of the glove compartment. The State takes the position that defendant was under arrest at the time of the search but does not address whether defendant was under arrest for the offense of illegal transportation of alcoholic liquor.

¶ 41        However, assuming that the arrest component of the search incident to arrest exception was satisfied, we find that the officers reasonably believed evidence relevant to the offense of transporting an open container of alcohol would be found in the glove compartment. See *supra* ¶¶ 35-37.

12

¶ 42                        B. Predicate Forcible Felony for AHC

¶ 43        Defendant argues that his conviction for AHC should be reversed because his Iowa conviction for burglary in the second degree was not a proper predicate offense. First, defendant argues that the legislature did not intend for out-of-state convictions to be considered under the definition of "forcible felony" in section 2-8 of the Criminal Code of 2012 (Code) (720 ILCS 5/2-8 (West 2016)). Alternatively, defendant contends that if the legislature did intend for out-of-state convictions to be considered, the State failed to prove that the Iowa offense of second degree burglary constituted a forcible felony in Illinois. Specifically, defendant argues that the offense of burglary in Iowa may be based on conduct that would not qualify as a burglary in Illinois, and the State failed to present evidence concerning the underlying facts of defendant's Iowa conviction. We find that, even assuming that the legislature intended for out-of-state convictions to qualify as forcible felonies, the State failed to prove beyond a reasonable doubt that defendant's Iowa conviction for second degree burglary was a forcible felony under Illinois law.

¶ 44        Defendant's argument presents questions of both statutory interpretation and sufficiency of the evidence. In considering a challenge to the sufficiency of the evidence, " 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) *People v. Collins*, 106 Ill. 2d 237, 261 (1985) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In order to prove defendant guilty of AHC, the State was required to prove that defendant (1) received, sold, possessed, or transferred a firearm and (2) was previously convicted of two forcible felonies as defined in section 2-8 of the Code. 720 ILCS 5/24-1.7(a) (West 2016). The question of whether the State proved beyond a

13

reasonable doubt that defendant's Iowa conviction for second degree burglary constituted a forcible felony requires us to interpret section 2-8 of the Code.

¶ 45        "The primary goal in construing a statute is to ascertain and give effect to the intent of the legislature." *People v. Belk*, 203 Ill. 2d 187, 192 (2003). "Legislative intent is best ascertained by examining the language of the statute itself." *Id.* "In determining the plain meaning of the statute, we consider the statute in its entirety and are mindful of the subject it addresses and the legislative purpose in enacting it." *People v. Baskerville*, 2012 IL 111056, ¶ 18. "Where the language is clear and unambiguous, there is no need to resort to aids of statutory construction." *Belk*, 203 Ill. 2d at 192. Also, if a statute is clear and unambiguous, "courts cannot read into the statute limitations, exceptions, or other conditions not expressed by the legislature." *People v. Glisson*, 202 Ill. 2d 499, 505 (2002). "[C]ourts may assume that the legislature did not intend absurdity, inconvenience or injustice to result from legislation." *Id.* Construction of a statute is a question of law which we review *de novo*. *Belk*, 203 Ill. 2d at 192.

¶ 46        Section 2-8 of the Code (720 ILCS 5/2-8 (West 2016)) provides:

> " 'Forcible felony' means treason, first degree murder, second degree murder, predatory criminal sexual assault of a child, aggravated criminal sexual assault, criminal sexual assault, robbery, burglary, residential burglary, aggravated arson, arson, aggravated kidnaping, kidnaping, aggravated battery resulting in great bodily harm or permanent disability or disfigurement and any other felony which involves the use or threat of physical force or violence against any individual."

¶ 47        Upon examining the plain language of the forcible felony statute and its legislative purpose, we find that the legislature intended the enumerated offenses in the forcible felony statute to refer to Illinois offenses. All of the enumerated offenses listed in the definition of

14

"forcible felony" bear the names of Illinois offenses that are subsequently defined in the Code. See *id.* §§ 9-1, 9-2, 10-1, 10-2, 11-1.20, 11-1.30, 11-1.40, 12-3.05, 18-1, 19-1, 19-3, 20-1, 20-1.1, 30-1. The purpose of the statute is to define the term "forcible felony," as used throughout the Code. See *id.* § 2-0.5. Given this context, we hold that the legislature intended for the enumerated offenses listed in the forcible felony statute to have the meaning later ascribed to them in the Code. See *id.* §§ 9-1, 9-2, 10-1, 10-2, 11-1.20, 11-1.30, 11-1.40, 12-3.05, 18-1, 19-1, 19-3, 20-1, 20-1.1, 30-1.

¶ 48    Thus, while the forcible felony statute makes no explicit provision concerning whether convictions from foreign jurisdictions may also constitute forcible felonies in Illinois, we find that if the legislature intended for offenses from foreign jurisdictions to constitute forcible felonies, the foreign conviction would either have to (1) satisfy the elements of one of the enumerated Illinois offenses, as defined in the Code, or (2) fall within the residual clause—*i.e.*, "any other felony which involves the use or threat of physical force or violence against any individual." *Id.* § 2-8. We need not decide whether a conviction from a foreign jurisdiction may constitute a forcible felony to resolve this case, as we find that the State failed to show that defendant's Iowa conviction for second degree burglary fell within either of these two categories.

¶ 49    1. *Enumerated Felony of Burglary*

¶ 50    First, the State failed to show that defendant's Iowa conviction for second degree burglary satisfied the elements of the Illinois offense of burglary. Under section 19-1(a) of the Code, "[a] person commits burglary when without authority he or she knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle, railroad car, or any part thereof, with intent to commit therein a felony or theft." *Id.* § 19-1(a).

15

¶ 51　　　　A person commits the Iowa offense of second degree burglary in either of the following situations:

> "a. While perpetrating a burglary in or upon an occupied structure in which no persons are present, the person has possession of an explosive or incendiary device or material, or a dangerous weapon, or a bodily injury results to any person.
>
> b. While perpetrating a burglary in or upon an occupied structure in which one or more persons are present, the person does not have possession of an explosive or incendiary device or material, nor a dangerous weapon, and no bodily injury is caused to any person." Iowa Code § 713.5 (2010).

The Iowa Code defines burglary as follows:

> "Any person, having the intent to commit a felony, assault or theft therein, who, having no right, license or privilege to do so, enters an occupied structure, such occupied structure not being open to the public, or who remains therein after it is closed to the public or after the person's right, license or privilege to be there has expired, or any person having such intent who breaks an occupied structure, commits burglary." *Id.* § 713.1.

¶ 52　　　　Under Iowa law, an "occupied structure" includes "any building, structure, appurtenances to buildings and structures, land, water or air vehicle, or similar place adapted for overnight accommodation of persons, or occupied by persons for the purpose of carrying on business or other activity therein, or for the storage or safekeeping of anything of value." *Id.* § 702.12. A structure meeting this description is considered an "occupied structure" whether or not a person is actually present within the structure. *Id.*

16

¶ 53        The Iowa Supreme Court has held that "[a] thing is an appurtenance 'when it stands in relation of an incident to a principal and is necessarily connected with the use and enjoyment of the latter.' " *State v. Pace*, 602 N.W.2d 764, 770 (Iowa 1999) (quoting *State v. Baker*, 560 N.W.2d 10, 13 (Iowa 1997)). In *Baker*, 560 N.W.2d at 13-14, the Iowa Supreme Court held that a driveway to a residence satisfied the definition of occupied structure. The court reasoned that a driveway was an appurtenance to a building or structure because "[d]riveways are closely associated with, and connected to, buildings and structures." *Id.* at 13. The court also found that driveways were "occupied by persons for the purpose of carrying on business or other activities, or used for the storage or safekeeping of anything of value." *Id.* at 14. The court reasoned: "Driveways are often occupied by persons for numerous types of activities, such as sporting activities, children playing, vehicle washing, cookouts, and countless other activities. Also, driveways are commonly used for the storage or safekeeping of things of value, namely automobiles, boats, and trailers." *Id.*

¶ 54        Upon examining the Illinois offense of burglary as defined in the Code and the Iowa offense of second degree burglary as defined pursuant to Iowa law, we find that an Iowa conviction for second degree burglary would not necessarily satisfy the elements of the Illinois offense of burglary. A person could be convicted of second degree burglary in Iowa if he or she, without authority, entered a driveway where no persons were present while carrying a dangerous weapon with the intent to commit a felony, theft, or assault. See Iowa Code §§ 702.12, 713.1, 713.5 (2010); *Baker*, 560 N.W.2d at 13-14. Entering a driveway under these circumstances would not constitute a burglary in Illinois. Section 19-1(a) of the Code (720 ILCS 5/19-1(a) (West 2016)) requires as an element of the offense of burglary that an individual knowingly

17

enter, or without authority remains in, a building, housetrailer, watercraft, aircraft, motor vehicle, railroad car, or any part thereof.

¶ 55        Thus, an Iowa conviction for second degree burglary is not necessarily equivalent to an Illinois conviction for burglary based on the elements of the offenses alone. The State presented no evidence concerning the underlying facts of defendant's Iowa conviction for second degree burglary. Accordingly, the State failed to show that defendant's Iowa conviction for second degree burglary constituted a conviction for burglary within the meaning of section 19-1(a) of the Code and the forcible felony statute. See *id.* §§ 2-8, 19-1(a). As a result, defendant's Iowa conviction for second degree burglary may only serve as a predicate forcible felony for the offense of AHC if it falls within the residual clause of the forcible felony statute.

¶ 56        In coming to this conclusion, we acknowledge that Illinois courts have held that, where a defendant is charged with AHC based on prior convictions for enumerated offenses in the forcible felony statute, the State is only required to prove the fact of the prior convictions of the enumerated offenses. *People v. McGee*, 2017 IL App (1st) 141013-B, ¶ 22; *People v. Perkins*, 2016 IL App (1st) 150889, ¶ 7. These courts have held that "[n]othing in the armed habitual criminal statute requires a court to examine a defendant's underlying conduct in commission of the enumerated offenses in order to find that the State has sustained its burden of proof." *Perkins*, 2016 IL App (1st) 150889, ¶ 7; *McGee*, 2017 IL App (1st) 141013-B, ¶ 22. However, these cases have only considered situations where a defendant was charged with AHC based on prior *Illinois* convictions for enumerated offenses. *Perkins*, 2016 IL App (1st) 150889, ¶¶ 1-2; *McGee*, 2017 IL App (1st) 141013-B, ¶¶ 4-6. In these circumstances, the mere fact of the conviction is enough to show that the elements of the Illinois offenses were satisfied. However, where, as here, the State seeks to use a conviction from a foreign jurisdiction as a predicate forcible felony, the State

18

must show that the foreign conviction satisfied the elements of one of the enumerated forcible felonies, as defined in the Code, or fell within the residual clause.

¶ 57                                                    2. *Residual Clause*

¶ 58        Having found that the State failed to prove that defendant's Iowa conviction for second degree burglary constituted a burglary within the meaning of the Illinois forcible felony statute, we now consider whether defendant's second degree burglary conviction fell within the residual clause of the forcible felony statute. Under the residual clause, a forcible felony includes "any other felony which involves the use or threat of physical force or violence against any individual." 720 ILCS 5/2-8 (West 2016). Illinois courts have held that crimes fall under the residual clause in two situations. *People v. Schultz*, 2019 IL App (1st) 163182, ¶ 21.

¶ 59        First, if one of the elements of the offense is a specific intent to carry out a violent act, then every instance of the offense necessarily qualifies as a forcible felony. *Id.* In such a situation, it is not necessary to consider the specific circumstances of the underlying offense. *Id.* Rather, the court conducts "an analysis of the elements of the underlying offense to determine whether proof of those elements necessarily entails the use or threat of force or violence against an individual." *People v. Sanderson*, 2016 IL App (1st) 141381, ¶ 6.

¶ 60        The Iowa offense of second degree burglary does not satisfy these requirements. Proof of the elements of second degree burglary does not necessarily entail the use or threat of force or violence against an individual. While the State contends that the possession of an explosive or incendiary device or deadly weapon shows the contemplation of and willingness to use force, proof of this is only required under subsection (a) of the second degree burglary statute. Iowa Code § 713.5(a) (2010). Notably, an additional element of subsection (a) is that no other person was present in the occupied structure at the time of the burglary. *Id.* The State did not present any

19

evidence as to which subsection defendant was convicted under. While the second degree burglary statute requires that the defendant have the intent to commit a felony, theft, or assault (see *id.* §§ 713.1, 713.5), a theft or felony is not always a violent act.

¶ 61 We reject the State's argument that the threat of physical force or violence is inherent even if defendant did not intend violence while committing a burglary. The State notes that the United States Supreme Court held in *Quarles v. United States*, 587 U.S. ___, ___, 139 S. Ct. 1872, 1879 (2019) (quoting *Taylor v. United States*, 495 U.S. 575, 588 (1990)), that the rationale for categorizing burglary as a violent felony was its " 'inherent potential for harm to persons.' " The *Quarles* Court further reasoned: "Burglary is dangerous because it 'creates the possibility of a violent confrontation between the offender and an occupant, caretaker, or some other person who comes to investigate.' " *Id.* at ___, 139 S. Ct. at 1879 (quoting *Taylor*, 495 U.S. at 588). However, the fact that legislatures have categorized burglary as a violent felony due to the inherent *potential* for violence and the *possibility* of a violent confrontation does not mean that proof of the elements of burglary *necessarily* entails the use or threat of force or violence, as required under the first prong of the residual clause. See *Sanderson*, 2016 IL App (1st) 141381, ¶ 6.

¶ 62 "The second way a felony can qualify as a forcible felony, even if a crime does not have violent intent as an element, is if the State proves that 'under the particular facts of this case,' the defendant contemplated the use of force and was willing to use it." *Id.* ¶ 7 (quoting *Belk*, 203 Ill. 2d at 195). Here, the State presented no evidence concerning the underlying facts of defendant's conviction for second degree burglary. Accordingly, the second prong of the residual clause was not satisfied.

20

¶ 63    Thus, even assuming that out-of-state convictions may constitute forcible felonies under section 2-8 of the Code (720 ILCS 5/2-8 (West 2016)), the State has failed to prove that defendant's Iowa conviction for second degree burglary constituted a forcible felony. Accordingly, defendant's conviction for AHC must be reversed because the State failed to prove that defendant had prior convictions for two forcible felonies, as required under section 24-1.7(a) of the Code (*id.* § 24-1.7(a)). See *People v. Lucas*, 231 Ill. 2d 169, 178 (2008) ("Due process requires that to sustain a conviction of a criminal offense, the State must prove a defendant guilty beyond a reasonable doubt of the existence of every element of the offense.").

¶ 64                              III. CONCLUSION

¶ 65    We conclude that the circuit court properly denied the motion to suppress evidence of the gun because the search of the locked glove compartment was justified under the automobile exception. We further conclude that the State failed to prove defendant guilty beyond a reasonable doubt of the offense of AHC because it failed to prove that defendant's Iowa conviction for second degree burglary met the definition of "forcible felony" under Illinois law. Accordingly, we affirm the denial of the motion to suppress, reverse defendant's conviction for AHC, and remand the matter for sentencing on the merged offense of UUWF.

¶ 66    Affirmed in part and reversed in part.
¶ 67    Cause remanded.

¶ 68    JUSTICE HOLDRIDGE, dissenting:

¶ 69    I would reverse the judgment of the circuit court denying the motion to suppress. Accordingly, I respectfully dissent.

¶ 70    First, I would find that the search of the locked glove compartment for open containers of alcoholic beverages was not justified under the automobile exception to the warrant requirement because the officers did not have probable cause to believe that they would find contraband in

21

the locked glove compartment. At trial, both Mumma and Shappard testified that the opened and unopened bottles of beer they found in the front seat were part of a six pack container and that all the bottles had been accounted for prior to the search of the locked glove compartment.[2] Also, the occupants of the vehicle made no effort to conceal the open bottles of beer from the officers. In fact, Pugh was drinking from one of the bottles while the defendant spoke to an officer. Additionally, at the time of the search, the only key to the glove compartment that the officers were aware of had been in the ignition of the running vehicle at the commencement of the traffic stop. Under these circumstances, a reasonable person would not be justified in believing that the occupants of the vehicle resealed an open container of an alcoholic beverage, placed it on its side in the glove compartment, and locked the glove compartment with a key that was also used to operate the vehicle in order to conceal the open container from the police.

¶ 71　　　　Moreover, based on the facts known to the officers at the time of the search, an open container of alcoholic liquor in the locked glove compartment would not have been contraband because the locked glove compartment was not part of the "passenger area" of the vehicle. Under section 11-502(a) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11-502(a) (West 2016)), a driver may not transport open containers of alcoholic liquor within the "passenger area" of a motor vehicle. The Vehicle Code does not define "passenger area." However, the following guidance from the Illinois Attorney General is helpful in defining this term:

　　　　　　"[W]hether a particular area of a motor vehicle is a passenger area is a factual determination which will have to be made in each particular instance. I am of the

_____

[2]As the majority noted, this court may consider evidence presented at trial that was not presented at the suppression hearing because the defendant filed a posttrial motion seeking reconsideration of the court's suppression ruling based, in part, on the presentation of additional evidence at trial. See *Gill*, 2018 IL App (3d) 150594, ¶ 76.

opinion, however, that in general for purposes of section 11-502 of [t]he \*\*\*

Vehicle Code, the term 'passenger area' means that portion of a motor vehicle

which is primarily designed for or which is adapted or devoted to the carrying of

passengers. This would include any area of the motor vehicle which is readily

accessible to the driver or a passenger." 1976 Ill. Att'y Gen. Op. No. S-1142, at 2,

https://illinoisattorneygeneral.gov/opinions/1976/S-1142.pdf

[https://perma.cc/RAU5-AWFY].

¶ 72    In the instant case, the locked glove compartment was not adapted or devoted to the

carrying of passengers. Based on the information known to the officers at the time of the search,

the locked glove compartment also was not readily accessible to the driver or a passenger while

the vehicle was on a highway prior to the stop. According to Shappard's testimony, the key used

to open the locked glove compartment was in the ignition of the running vehicle at the time he

and Mumma initiated the traffic stop. This was the only key to the glove compartment that the

officers were aware of at the time of the stop. It would have been impossible for the defendant or

a passenger to use this key to store or retrieve an open container of alcohol in the glove

compartment while the defendant was driving the vehicle because the key was also needed to

operate the vehicle. While the officers later discovered an additional key to the glove

compartment in Pugh's shoe, they were unaware of this key at the time of the search and it could

not support a probable cause determination.

¶ 73    Because the locked glove compartment was not part of the passenger area, an open

container of alcohol stored inside of it would not have violated section 11-502(a) of the Code.

Accordingly, the search of the locked glove compartment was not justified under the automobile

23

exception because the officers lacked probable cause to believe that contraband would be found inside. See *Ross*, 456 U.S. at 824.

¶ 74  I would also find that the officers were not justified in searching the locked glove compartment based on the search incident to arrest exception. Assuming that the defendant had been arrested for transporting an open container of alcoholic liquor at the time of the search, it was not reasonable for the officers to believe they would find evidence of this offense inside the locked glove compartment. *Supra* ¶ 71. Also, based on the facts known to the officers, the locked glove compartment was not part of the passenger area. *Supra* ¶¶ 72-73. Accordingly, an open container of alcohol in the locked glove compartment would not violate section 11-502 of the Code.

¶ 75  Because I would find that the court erred in denying the motion to suppress evidence of the gun and because the State cannot prove the elements of either UUWF or AHC without evidence of the gun, I would reverse the defendant's conviction outright. See *People v. Jones*, 346 Ill. App. 3d 1101, 1106-07 (2004). Accordingly, I would not reach the defendant's argument that his Iowa conviction for second degree burglary was not a proper predicate offense for the charge of AHC.

**No. 3-18-0349**

| | |
|---|---|
| **Cite as:** | *People v. McGhee*, 2020 IL App (3d) 180349 |
| **Decision Under Review:** | Appeal from the Circuit Court of Rock Island County, No. 16-CF-805; the Hon. Norma Kauzlarich, Judges, presiding. |
| **Attorneys for Appellant:** | James E. Chadd, Thomas A. Karalis, and Bryon Kohut, of State Appellate Defender's Office, of Ottawa, for appellant. |
| **Attorneys for Appellee:** | Dora A. Villarreal, State's Attorney, of Rock Island (Patrick Delfino, Thomas D. Arado, and Mark A. Austill, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |