NOT DESIGNATED FOR PUBLICATION

No. 124,202

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellant*,

v.

SCOT C. FORTNER,
*Appellee*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed July 15, 2022.
Reversed.

*Steven J. Obermeier*, assistant solicitor general, and *Derek Schmidt*, attorney general, for
appellant.

No appearance by appellee.

Before CLINE, P.J., ISHERWOOD and HURST, JJ.

PER CURIAM:  The State appeals the district court's decision to suppress evidence
discovered in a search of Scot C. Fortner's truck. After pulling Fortner over for a traffic
violation, officers discovered an open container of liquor on his passenger seat. A search
of his truck revealed methamphetamine and drug paraphernalia in a small black case
behind the driver's seat. The district court suppressed the evidence found in the case after
finding it unreasonable for the officers to have expected to find an open container in the
case.

1

Because the district court found the case was large enough to contain a single-shot bottle of liquor and the scope of the search extended to any container able to hold the object of the search, we reverse the district court's order granting Fortner's motion to suppress.

*Motion to suppress hearing*

The State charged Fortner with: (1) possession of methamphetamine with intent to distribute; (2) possession of drug paraphernalia with intent to distribute; (3) failure to stop when emerging from an alley, building, private road, or driveway; and (4) transporting an open container. He moved to suppress all evidence obtained in the search of his truck. He claimed the officers had no probable cause to search his truck since it was not immediately apparent the seal on the liquor bottle was broken. He also objected to the scope of the search, claiming the officers had no probable cause to search the small black case since he contended the case was not a container in which an open container of alcohol could be found.

The State responded by arguing the warrantless search was lawful under the plain-view and automobile exceptions to the warrant requirement. The State also contended the officers did not exceed the permissible scope of the search because a small bottle of alcohol could have fit in the case.

At the hearing on the motion to suppress, Officer Scott Cowman testified he and Officer Cody Lawson stopped Fortner after Fortner pulled out of a parking lot at a high rate of speed, almost striking their patrol vehicle. While Officer Cowman was standing outside the passenger side of the truck, he observed a brown paper bag containing a clear bottle with the seal cracked in the passenger's seat, which appeared to be an open container of alcohol. Inspection confirmed the container inside the bag was a bottle of 99 Bananas, a brand of alcohol. The officers then searched the truck to look for other open

2

containers. They looked inside what Officer Cowman described as "a hard-shell zipped container, commonly referred to as a drug-kit," behind the driver's seat. Inside the container was a powdery substance Cowman believed to be methamphetamine, a small digital scale, glass pipes, and a large amount of money.

Officer Cowman said he had experience with alcohol both as a consumer and as a former employee of a liquor store. In his experience, alcohol containers come in a range of sizes, "anywhere from what is commonly called a shooter, which would be . . . about maybe four inches all the way up to what's called a handle, so a gallon." He searched the case because he believed it was large enough to contain a shooter.

Ultimately, the district court granted Fortner's motion to suppress as it pertained to the methamphetamine and other items found inside the case. The district court concluded the officers' seizure of the bottle of 99 Bananas was lawful under the plain-view exception. The court then discussed the officers' search of the rest of the truck:

> "Going to the Automobile Exception, it then gives them the authority to search the vehicle for other containers containing liquor—open containers, basically. But that's a reasonable search. That doesn't mean they can search every container that's within the car. And in this particular case, what they searched was, 'um— . . . It is a small, black, zippered container. It is probably about six to seven inches long, probably about four inches wide. Is that roughly it?
> "[The Prosecutor]: I believe so, Your Honor.
> "THE COURT: The depth on that is probably about two and a half inches.
> "I think the officer, Cowman, testified that that was consistent with containers that are known to contain drugs and paraphernalia. I think when he made his search on that time—at that time on this particular container, it wasn't reasonable for that to be expected to have an open container within it. There are open containers that small. They are the airplane liquor containers we talk about, things of that nature that would certainly fit in this. But it's not reasonable based on the size of the liquor container that was in the defendant's front seat, which is—I don't know if that was—it's more than a pint, and I

3

don't know if that was four-fifths of a pint or in between that, but it's a much larger bottle than would be in this particular container here. So I find that the search of this container was basically, because it was the same type of container that's known to the officers to contain drugs and drug paraphernalia, and it wasn't reasonable to open it up to search for open containers of liquor. Had they brought this to a neutral magistrate for a search warrant, they would not have gotten a search warrant to open this container for drugs or for liquor, because there would've been insufficient evidence of probable cause that this container contained either on that basis without more. So I will sustain the Defendant's Motion to Suppress this particular evidence, and that is the container that contained the drugs and the scale."

The State filed an interlocutory appeal of the district court's suppression of the evidence found in the case, under K.S.A. 2021 Supp. 22-3603.

*The district court erred in granting Fortner's motion to suppress.*

On appeal, the State argues that the district court erred in granting Fortner's motion to suppress because the discovery of a pint-size open container of alcohol established probable cause to search the case since it could have contained an open container of alcohol such as a shooter. Fortner did not file a brief in response and makes no arguments on appeal.

When the material facts are undisputed, as here, the district court's decision on whether to suppress evidence is a question of law subject to unlimited review. *State v. Stevenson*, 299 Kan. 53, 57, 321 P.3d 754 (2014).

Both our federal and state Constitutions protect against unreasonable searches and seizures. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." Section 15 of the Kansas

Constitution Bill of Rights, in turn, provides that "[t]he right of the people to be secure in their persons and property against unreasonable searches and seizures, shall be inviolate."

A warrantless search by a police officer is per se unreasonable under the Fourth Amendment unless the State can fit the search within one of the recognized exceptions to the warrant requirement. These exceptions are:  consent, search incident to a lawful arrest, stop and frisk, probable cause plus exigent circumstances, the emergency doctrine, inventory searches, plain view or feel, and administrative searches of closely regulated businesses. It is the State's burden to establish that one of these exceptions applies to justify the search. *State v. Doelz*, 309 Kan. 133, 140, 432 P.3d 669 (2019).

A subclass of the probable-cause-plus-exigent-circumstances exception is the automobile exception. The mobility of the vehicle provides the exigent circumstance:  If a vehicle is readily mobile and probable cause exists to believe the vehicle contains contraband or evidence of a crime, the Fourth Amendment does not require a warrant for police to search the vehicle. *Stevenson*, 299 Kan. at 58. The probable cause analysis reviews the totality of the circumstances to determine whether there is a "'fair probability'" that the place to be searched contains contraband or evidence. 299 Kan. at 64-65.

The landmark United States Supreme Court case for the automobile exception is *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982). In *Ross*, law enforcement received a tip that Ross had completed a drug deal using drugs he kept in the trunk of his car. Police stopped Ross and searched the interior of his car. They then searched the trunk and found a brown paper bag containing drugs. The Court upheld the search, stating:  "If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." 456 U.S. at 825. The Court explained:

"The scope of a warrantless search of an automobile thus is not defined by the nature of the container in which the contraband is secreted. Rather, it is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase. Probable cause to believe that a container placed in the trunk of a taxi contains contraband or evidence does not justify a search of the entire cab." 456 U.S. at 824.

Likewise, the Kansas Supreme Court has held that "when police officers have made a lawful stop of a vehicle and have probable cause to believe that contraband is in the vehicle the officers may search every area of the vehicle and its contents which might reasonably contain the contraband, without the necessity of first obtaining a warrant." *State v. Jaso*, 231 Kan. 614, 622, 648 P.2d 1 (1982).

The United States Supreme Court and Kansas courts have explained that under the Fourth Amendment, an officer's subjective belief is irrelevant in establishing probable cause. Instead, it is the objective facts that govern the reasonableness of an officer's actions. See, e.g., *Brigham City, Utah v. Stuart*, 547 U.S. 398, 404, 126 S. Ct. 1943, 164 L. Ed. 2d 650 (2006) ("An action is 'reasonable' under the Fourth Amendment, regardless of the individual officer's state of mind, 'as long as the circumstances, viewed *objectively*, justify [the] action.'"); *State v. Beltran*, 48 Kan. App. 2d 857, 879, 300 P.3d 92 (2013) ("'[T]he subjective intent of the law enforcement officer is irrelevant in determining whether that officer's actions violate the Fourth Amendment.' What matters 'is not [the officer's] state of mind, but the objective effect of his [or her] actions. [Citation omitted.]'") (quoting *Bond v. United States*, 529 U.S. 334, 338 n.2, 120 S. Ct. 1462, 146 L. Ed. 2d 365 [2000]).

6

Additionally, an officer's training and experience is properly considered as a factor in a totality of the circumstances analysis of probable cause. *State v. Fitzgerald*, 286 Kan. 1124, 1130, 192 P.3d 171 (2008), *abrogated on other grounds by State v. Sanchez-Loredo*, 294 Kan. 50, 272 P.3d 34 (2012).

In *Wyoming v. Houghton*, 526 U.S. 295, 302, 119 S. Ct. 1297, 1301, 143 L. Ed. 2d 408 (1999), the United States Supreme Court clarified that the rule laid down in *Ross* applies broadly to all containers within a car that may conceal the object of the search, without qualification as to ownership and without a showing of individualized probable cause for each container. In that case, an officer conducting a traffic stop noticed a hypodermic syringe in the driver's shirt pocket, which the driver admitted using to take drugs. The officer then searched the car for contraband, removing and searching what Houghton, a passenger in the car, claimed was her purse. He found drug paraphernalia there and arrested her on drug charges.

As the Court explained:  "'The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought.'" 526 U.S. at 302.

> "When there is probable cause to search for contraband in a car, it is reasonable for police officers—like customs officials in the founding era—to examine packages and containers without a showing of individualized probable cause for each one. A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are 'in' the car, and the officer has probable cause to search for contraband *in* the car." 526 U.S. at 302.

Thus, under *Houghton*, there is no need to show evidence that a specific container holds the object of the search, so long as it is in the car and able to contain the contraband.

Here, the district court determined the plain-view exception applied to the seizure of the bottle. It also found the automobile exception authorized the officers to search the truck for other open containers, since they had discovered an open container in the truck. But it then concluded the search was limited to containers able to conceal an open container of similar size to the open container the officers had found. Even though the court found the case was large enough to contain a shooter, which would qualify as an open container if open, it found it unreasonable for the officers to be searching for a shooter based on the size of the open container already discovered.

The State argues the district court erred in suppressing the evidence because the scope of this search properly extended to *any* alcoholic beverage in an opened package or container—not just other bottles of 99 Bananas or similar sized containers. It contends the officers were justified in searching any container able to contain an alcoholic beverage of any size. Because the officers performing the search knew that alcohol came in small containers (shooters), they were thus entitled to look in any container large enough to contain a shooter, including the case.

The State relies on *State v. Myers*, 10 Kan. App. 2d 266, 697 P.2d 879 (1985). In *Myers*, the defendant challenged the scope of a search conducted under a warrant. The search warrant authorized a search of Myers' house for amphetamines. The issue in that case was whether the officer's search of Tylenol bottles and other prescription bottles was reasonable, given the object of the search. In rejecting Myers' claim that the search of the bottles exceeded the scope of the warrant, the court noted that one officer who conducted the search testified that amphetamines can be in powder, tablet, or capsule form. Thus, under *Ross*, the search was reasonable, since the small size of the drugs justified looking in small containers such as the bottles. "Further, it appear[ed] logical that a search for amphetamines would include a search of pill bottles." 10 Kan. App. 2d at 273.

The State argues that, just as amphetamines can be possessed in different forms, so too can alcohol containers. And like in *Myers*, Officer Cowman testified that alcoholic beverages can be bought in containers small enough to fit inside the case at issue.

The State also cites several cases from other jurisdictions dealing with the scope of warrantless searches of containers in vehicles stemming from an officer's discovery of an open container of alcohol in the vehicle.

In *State v. Daily*, 164 Idaho 366, 429 P.3d 1242 (Ct. App. 2018), an officer stopped Daily after observing him commit several traffic offenses. During his initial contact with Daily, the officer noticed an open can in the vehicle and suspected it was an alcoholic beverage. A later records check revealed that Daily had an outstanding warrant, and he was arrested. Officers then searched Daily's vehicle, retrieving the can. Another empty can was found on the passenger-side floor and other unopened alcohol containers were found in the back seat. The officers then searched the glove box and discovered methamphetamine and other drug paraphernalia. Daily moved to suppress all evidence seized from the vehicle, which the district court granted.

The district court concluded the search of the glove box was outside the scope of the search allowed under the automobile exception, because the officer did not question Daily to determine how many drinks he may have had while driving or if there may be further open containers in the car and did not observe liquid or alcoholic odor emanating from either the vehicle or glove box suggesting that another container may be present. The district court also noted that, although the officer testified that he had discovered an open container in a glove box, the officer clarified that this container could be resealed; it was not a non-resealable can such as those found in Daily's vehicle. Thus, the district court determined no reasonable person would conclude that an open container would be present in the glove box and no magistrate, presented with these facts, would have found

9

probable cause to support issuing a search warrant for the glove box, had one been requested.

On appeal, Daily did not argue the officers lacked probable cause to search his car for more open containers or that an open container could not fit in his glove box. Instead, he argued the automobile exception did not permit the warrantless search of the glove box because no reasonable person would conclude that an open container would be present in a glove box. In rejecting this argument and reversing the district court's decision, the Idaho Court of Appeals stated:

> "While Daily did not provide any incriminating statements related to 'how many drinks he may have had while driving' or whether there were 'further open containers in the car,' such information was not required in order for the automobile exception to encompass the glove box because specific probable cause vis-à-vis the glove box was not required under *Ross* and *Houghton*. The sole inquiry was whether the glove box might hold an open container. The district court did not find, and Daily does not identify, any evidence demonstrating that the glove box could not hold an open container. Thus, there is no basis from which this Court can conclude that the search of the glove box in this case was constitutionally unreasonable." *Daily*, 164 Idaho at 369-70.

The State likewise argues that, under *Houghton*, no showing of individualized probable cause was required for the officers to search any container found in Fortner's car.

The State next cites to *People v. McGhee*, 162 N.E.3d 1080 (Ill. 2020). In *McGhee*, the defendant was pulled over for a traffic violation with several passengers in the car. Before approaching the car, the officer observed the front seat passenger moving in a way that resembled putting something in the glove box. Upon approaching the vehicle, the officer observed multiple open containers in the vehicle. After searching the vehicle for more open containers, the officers located a six-pack on the floor with four

sealed beers in it. Together with the open containers, the entire six-pack was accounted for. The officers then continued the search, finding a firearm and other contraband in the locked glove box. The district court denied McGhee's motion to suppress the evidence found in the glove box.

On appeal, McGhee argued that the officers' search of the locked glove box for open containers of alcohol was not justified because it was not reasonable to believe that open containers of alcohol would be found in the glove box where the officers had accounted for all six bottles from the package. The Illinois Court of Appeals rejected this argument, finding that the district court properly denied the motion to suppress because the officers had probable cause to search the glove box. 162 N.E.3d at 1088. Under the automobile exception, the officers could search any part of the passenger compartment of the vehicle where there was probable cause to believe that open containers of alcohol could be found, including the locked glove box. The officer testified that an open bottle of beer that had been resealed could fit in the glove box on its side and testified that he observed the front seat passenger make movements consistent with placing something in the glove box. The officers did not have to assume that no more open containers of alcohol other than the six-pack of beer were present in the vehicle. There could have been open containers of types of alcohol other than beer in the vehicle as well. Finally, the officer testified that the bottles of beer he observed could have been resealed by having the cap screwed back on and would have fit in the glove box on their sides. 162 N.E.3d at 1088.

The court in *McGhee* stated that the scope of the search did not terminate once the entire six-pack had been accounted for; other types of alcohol could have been found in the vehicle and probable cause existed to look for other containers. 162 N.E.3d at 1088.

Finally, the State cites *State v. Rincon*, 970 N.W.2d 275 (Iowa 2022). In that case, police encountered a stolen car parked near an apartment complex with four passengers

inside. An individual who appeared to be the driver was walking from the apartment complex toward the car. The officers observed a half-empty bottle of liquor on the driver's seat and another open container of liquor standing on the rear seat floorboard. The officers ordered the passengers out of the car, one of whom tried to take her backpack with her. While doing so, one of the officers saw what he believed to be a bag of marijuana sticking out of the backpack. A subsequent search of the backpack confirmed this. In the ensuing criminal proceeding, the passenger moved to suppress the results of the search of her backpack. The district court denied the motion, concluding that the automobile exception applied.

On appeal, the primary issue was whether the passenger's backpack remained subject to the automobile exception when it was removed from the vehicle before the search. The Iowa Supreme Court affirmed the district court, refusing to hold that the removal of the bag from the car after probable cause arose removed it from the scope of the automobile search. 970 N.W.2d at 285. In reaching this conclusion, the court also concluded that the backpack was large enough to conceal an open container. While Rincon did not contest that her backpack was large enough to be subject to the search, the court opined on the permissible scope of containers that could have been searched. The court noted that "[a]ny container in the vehicle that could hold an alcoholic beverage— even a flask or a miniature bottle—would be fair game." 970 N.W.2d at 281. The court then stated:

> "A final, potential question is whether the pockets of Rincon's backpack were the type of container that could have held contraband. Rincon does not contest this point here, and she did not contest it below. Implicitly, she concedes here—and she implicitly conceded below—that *if* the automobile exception applies, the search of the backpack was valid. In granting the State's motion to reconsider its initial decision to suppress the results of the search of the backpack, the district court simply relied on *United States v. Ross* and [*State v.* ]*Eubanks*[, 355 N.W. 2d 57 (Iowa 1984),] to hold that 'Rincon had no expectation of privacy that would have precluded law enforcement from searching the

containers within the detained vehicle, which included her backpack.' Regardless, on our de novo review, the front pocket of the backpack (where the bag of marijuana was protruding) was large enough to hold at least a single-shot bottle of liquor. And, in any event, the plastic bag of marijuana was spotted in plain view before the officers even began searching the inside of the backpack." 970 N.W.2d at 285-86.

Thus, according to *Daily* and *McGhee*, the discovery of an open container justifies a search of any container in the vehicle which could hold an open container, with no differentiation as to the type. *Rincon* also extends this principle to its logical end by saying this includes any container able to hold a shooter.

Here, the district court conceded that the case could contain a shooter and that an unsealed shooter would qualify as an open container but concluded this was not enough to justify the search. The court found that although the case could theoretically contain an open container—a shooter—"at that time on this particular container, it wasn't reasonable for that to be expected to have an open container within it." The district court appeared to be impermissibly requiring a showing of individualized probable cause to search the case. Because the district court found that probable cause existed to search the car for more open containers and found that the case was large enough to hold an open container, the officer's search of the case was lawful.

Based on the broad application of the automobile exception under *Ross* and *Houghton*—as evidenced in *Myers* and the cases from other jurisdictions cited by the State—we find the court erred in suppressing the methamphetamine and paraphernalia found in the black case.

Reversed.